UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
PAUL PENNOLINO,

                       Plaintiff,

  -against-

CENTRAL PRODUCTIONS LLC,
,

                       Defendant.
---------------------------------------------------------------------X

Civ. Case No. 1:22-cv-5051

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Paul Pennolino, through his attorneys, Harwood Law PLLC, alleges as follows:

## NATURE OF THE ACTION

1. Defendant Central Productions LLC ("Central Productions"), who employed Mr. Pennolino as a director of "The Daily Show with Trevor Noah" ("The Daily Show"), violated federal, state and local age discrimination laws by terminating Mr. Pennolino's employment on account of his age, breached a written contract by failing to give Mr. Pennolino credit as director for several episodes and by preventing him from directing several episodes of The Daily Show, and breached an agreement to renew his written employment contract. Plaintiff seeks compensatory, liquidated and punitive damages, for defendant's violation of: (1) the Age Discrimination in Employment Act of 1967, as codified by 29 U.S.C. § 621, *et seq*. ("ADEA"); (2) the New York State Human Rights Law, New York State Executive Law § 290, *et seq.*, ("NYSHRL"); (3) the New York City Human Rights Law, New York City Administrative Code § 8-102 *et seq*. ("NYCHRL"); and (4) for defendant's breaches of contracts, including breach of the implied covenant of good faith and fair dealing.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, because it involves a claim arising under the laws of the United States, specifically, the ADEA.

3. The Court has diversity jurisdiction over the state and local law claims under 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000.00 and there is complete diversity of citizenship between the parties.  Mr. Pennolino is a citizen of New York, defendant is a limited liability company organized under the laws of Delaware, and none of defendant's members are citizens of New York.

4. The Court has supplemental jurisdiction over the state law and local law claims pursuant to 28 U.S.C. § 1367, because this Court has original jurisdiction over the ADEA claim, and the state law and local law claims arise from the same nucleus of operative facts.

5. Venue is proper in this district pursuant to 28 U.S.C § 1391(b), because the conduct giving rise to this action occurred in this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. On March 7, 2022, Mr. Pennolino filed his Charge of Discrimination ("Charge of Discrimination") with the United States Equal Employment Opportunity Commission (the "EEOC"), against Central Productions LLC, alleging claims of age discrimination.  Pursuant to the Age Discrimination in Employment Act Work-sharing Agreement Between the United States Equal Employment Opportunity Commission and the New York State Division of Human Rights, the New York State Division of Human Rights has designated the EEOC as its agent to accept charges of age discrimination under the Human Rights Law.  Under the Work-sharing Agreement, the filing with the EEOC also constitutes a filing with the New York State Division of Human Rights.

7. Mr. Pennolino filed his charge with the EEOC within 300 days of the termination of his employment on July 1, 2021.

8. More than 60 days have passed since Mr. Pennolino filed the charge of discrimination with the EEOC.

9. On April 8, 2022, the EEOC issued to Mr. Pennolino a "Notice of Right to Sue within 90 Days" with reference to his charge of discrimination (hereinafter "Notice of Right to Sue").

10. Mr. Pennolino commenced this action within the time prescribed by the Notice of Right to Sue.

### THE PARTIES

11. Mr. Pennolino's date of birth is September 2, 1960.

12. Mr. Pennolino is a citizen of the state of New York.

13. At the time of the events complained of herein, Mr. Pennolino was 60 years old.

14. Mr. Pennolino is an accomplished director, assistant director, and producer with almost 40 years of experience in the industry.

15. Mr. Pennolino has received multiple nominations for Emmy Awards and Directors Guild of America Awards, including a 2020 Emmy nomination for Outstanding Director for a Variety Series for *Last Week Tonight with John Oliver*, and a 2017 Emmy nomination for Outstanding Director for a Variety Special for *Full Frontal with Samantha Bee Presents the Not the White House Correspondents Dinner*.

16. Mr. Pennolino has directed two of today's most culturally significant TV programs – *The Daily Show with Trevor Noah* and *Last Week Tonight with John Oliver*

17. Mr. Pennolino worked for the Daily Show as a director or assistant director for 21 years.

18. During his time working for the Daily Show, Mr. Pennolino was nominated for numerous Emmy awards on other television shows.

19. Trevor Noah, the host and Executive Producer of the show, described Mr. Pennolino as both a "treasure" and a "legend."

20. Central Productions is a foreign limited liability company organized under the laws of the State of Delaware.

21. At the time of the events complained of herein, Central Productions maintained and operated a business office located at 345 Hudson Street, 9th Floor, New York, New York 10014.

22. Upon information and belief, Central Productions has more than 20 employees at its New York locations.

23. Upon information and belief, at all times relevant to the events complained of herein, Central Productions was owned by ViacomCBS, now known as Paramount.

24. Upon information and belief, none of the members of Central Productions are citizens of the State of New York.

## STATEMENT OF FACTS

25. On June 24, 2020, Mr. Pennolino and Central Productions entered into an agreement for Mr. Pennolino to render directing services in connection with the thirty to sixty minute television series currently entitled "The Daily Show," including any and all thirty minute and/or sixty minute special editions (collectively, the "Series").

26. As set forth in Section 2 of the Agreement, "the term of this Agreement shall commence July 2, 2020 and continue through July 1, 2021 (the "Initial Term"), and then as may be further extended by our exercise of the option(s) (each an "Option") described in Paragraph 5 below, if at all (collectively, the "Term").

27. As set forth in Section 7 of the Agreement, "Provided Artist fully performs all material obligations of this Agreement, Artist shall receive "Directed by" screen credit on all episodes of the Series on which Artist renders such services."

28. When the Company was negotiating to renew Mr. Pennolino's contract in or about February of 2020, Jill Katz, an Executive Producer, told him that based on his outstanding performance he should negotiate for a higher salary.

29. Central Productions gave Mr. Pennolino a substantial increase in salary when it entered into a new contract with him dated June 24, 2020.

30. In December 2020, Mr. Pennolino co-directed a Daily Show special featuring an interview with President Obama, which was nominated for a Directors Guild of America Award.

31. Mr. Pennolino received significant accolades from the executives and the production team for his efforts on that program.

32. On December 11, 2020, Pam DePace, Supervising Producer for The Daily Show, sent an email to Mr. Pennolino and others with the call sheet for the Obama shoot.

33. The call sheet listed Mr. Pennolino as director.

34. The call sheet also listed David Paul Meyer as director.

35. Mr. Pennolino co-directed the Obama shoot with Mr. Meyer.

36. When Mr. Pennolino requested co-directing credit, Ms. DePace and Ms. Katz, acting on behalf of Central Productions, agreed to give him the credit.

37. Central Productions did not give Mr. Pennolino co-directing credit for the Obama episode.

38. Central Productions gave sole credit for directing the Obama episode to Mr. Meyer.

39. Mr. Meyer later received a nomination for a Directors Guild of America award for the Obama episode.

40. If Central Productions had given Mr. Pennolino credit for his work as co-director of the Obama episode, he would have received a nomination for a Directors Guild of America award for his work on that episode.

41. Mr. Pennolino received numerous assurances from Executive Producers Jill Katz and Jennifer Flanz, and the Supervising Producer, Pam DePace, that the Company would exercise his option for the second year of his contract.

42. On May 28, 2021, Naomi Powell called Mr. Pennolino by telephone. During that conversation she informed him that Central Productions would not exercise its option for the second year of its three-year contract.

43. Mr. Pennolino repeatedly pressed for an explanation of why Central Productions had refused to exercise its option.

44. She said repeatedly it was not performance based.

45. Instead, she said it was related to COVID and uncertainty.

46. There was nothing about COVID that prevented Mr. Pennolino from continuing in his position as director.

47. There was nothing about uncertainty that prevented Mr. Pennolino from continuing in his position as director.

48. Central Productions continued to produce the Daily Show during COVID.

49. Central Productions used Mr. Meyer as director during the COVID epidemic.

50. Mr. Pennolino could have continued to perform the director's job during COVID that Mr. Meyer performed.

51. Following the call, on May 28, 2021, Ms. Powell sent a letter to Mr. Pennolino by email notifying him that Central Productions "has elected not to exercise its Option to pick up Artist for a Second Cycle in connection with the Series."

52. Under the written contract then in effect, Mr. Pennolino's employment continued through July 1, 2021.

53. By electing not to exercise its option, Comedy Central terminated Mr. Pennolino's employment as of July 2, 2021.

54. Mr. Pennolino's employment record during his 21 years with the Daily Show is spotless.

55. The Company replaced Mr. Pennolino, who is 61 years old, with Mr. Meyer, who is substantially younger.

56. On information and belief, Mr. Meyer was born on October 19, 1972.

57. On information and belief, Mr. Meyer was less than 40 years old on July 2, 2021.

58. The Company also created a hostile work environment, by promoting Mr. Meyer, despite his romantic relationships with subordinate female staffers, to the detriment of Mr. Pennolino and others who were not involved in romantic relationships with Mr. Meyer.

59. Several staffers – both male and female – confided to Mr. Pennolino that Mr. Meyer's conduct creates a hostile work environment.

60. These circumstances create an inference of age discrimination because Mr. Pennolino was replaced by a younger worker, Mr. Meyer, who did not have the experience, reputation or credentials that Mr. Pennolino had.

61. Jennifer Flanz, an Executive Producer of The Daily Show, made derogatory comments about Mr. Pennolino's age, stating that he was too old, could not adapt to a younger host, younger audience and more expansive social media platform.

62. According to a confidential witness interview, Ms. Flanz criticized other workers who are over forty claiming that they did not understand new technology, Tik-Tok and the web.

63. Central Productions fired several other workers who were over 40 years old at about the same time that it fired Mr. Pennolino.

64. Central Productions replaced those fired workers with substantially younger workers.

65. Central Productions fired Craig Spinney.

66. Mr. Spinney was over forty at the time Central Productions fired him.

67. Central Productions replaced Mr. Spinney with a substantially younger worker.

68. Central Productions fired Rob York.

69. Mr. York was over forty at the time Central Productions fired him.

70. Central Productions replaced Mr. York with a substantially younger worker.

**FIRST CAUSE OF ACTION**

*Age Discrimination in Violation of the ADEA*

71. Plaintiff repeats the allegations in paragraphs 1 through 70.

72. At all relevant times, Mr. Pennolino was an employee of Defendant Central Productions, and Central Productions was an employer, as those terms are defined in the relevant provisions of the ADEA, 29 U.S.C. § 630(b) and (f).

73. Mr. Pennolino suffered an adverse employment action when Defendant Central Productions terminated his employment by declining to renew his contract for a new term beginning on July 2, 2021.

74. At the time of this adverse employment action, Mr. Pennolino was 60 years old, which makes him a member of a class of employees who are protected under the ADEA.

75. Mr. Pennolino was qualified to hold the position he held as director of The Daily Show, at the time Defendant Central Productions terminated him from that position.

76. Defendant Central Productions replaced Mr. Pennolino with a substantially younger employee, which gives rise to an inference of age discrimination.

77. At about the same time that Defendant Central Productions terminated Mr. Pennolino's employment, it also terminated the employment of several other older employees, as alleged above.

78. Those other older employees were members of the protected class, because they were over forty years old.

79. Those other older employees were qualified for the jobs they held prior to termination of employment.

80. Defendant replaced those other older employees with substantially younger employees.

81. The termination of those other older employees, under these circumstances, shows a pattern of age discrimination, which gives rise to an inference that Defendant Central Productions discriminated against Mr. Pennolino based on age when it terminated Mr. Pennolino's employment.

82. The statements of Ms. Flanz, an Executive Producer, as alleged above, that Mr. Pennolino and other workers were too old, could not adapt to a younger host, younger audience and more expansive social media platform, create an inference of discrimination.

83. By reason of the above-described conduct, Defendant Central Productions has engaged in intentional discrimination against Mr. Pennolino because of his age, in violation of his rights under the ADEA.

84. Defendant Central Productions knew when it fired Mr. Pennolino that the ADEA prohibited discrimination on the basis of age against workers who are older than forty years of age.

85. By terminating Mr. Pennolino's employment for discriminatory reasons with knowledge that the ADEA prohibited such conduct, Defendant Central Productions engaged in a discriminatory practice with malice and/or with reckless indifference to Mr. Pennolino's federally protected rights, and therefore, engaged in willful age discrimination.

86. As a direct and proximate result of the Company's willful, knowing and intentional discrimination, Mr. Pennolino has suffered and will continue to suffer loss of earnings, employment benefits, retirement benefits, residuals, job opportunities, and other incidental expenses. Accordingly, Defendant Central Productions is liable to Mr. Pennolino for both back pay and front pay, with benefits, in an amount to be determined at trial, estimated to be in excess of $20,000,000, plus attorneys' fees, costs and prejudgment interest.

87. Defendant Central Productions' unlawful conduct in discriminating against Mr. Pennolino on the basis of his age was willful, entitling him to an additional sum of liquidated damages in an amount equal to the wages lost.

## SECOND CAUSE OF ACTION

*Age Discrimination in Violation of the New York State Human Rights Law ("NYSHRL")*

88. Plaintiff repeats the allegations in paragraphs 1 through 87.

89. At all relevant times, Mr. Pennolino was an employee for purposes of § 296 of the NYSHRL, and Defendant Central Productions was an employer for purposes of § 292 of the NYSHRL.

90. By its actions detailed above, Defendant has unlawfully discriminated against Mr. Pennolino on the basis of his age in violation of Section 296 of the NYSHRL.

91. Defendant Central Productions knew when it fired Mr. Pennolino that the NYSHRL prohibited discrimination based on age against workers who are older than forty years of age.

92. By terminating Mr. Pennolino's employment for discriminatory reasons with knowledge that the NYSHRL prohibited such conduct, Defendant Central Productions engaged in a discriminatory practice with malice and/or reckless indifference to Mr. Pennolino's rights under state law, and therefore, engage in willful age discrimination.

93. As a result of the willful discrimination described above, Mr. Pennolino has suffered and will suffer substantial damages, including but not limited to, loss of earnings, employment benefits, retirement benefits, residuals, job opportunities, other incidental expenses, and emotional distress.

94. By virtue of the foregoing, Plaintiff has been damaged in an amount to be determined at trial, estimated to be in excess of $20,000,000, plus interest thereon, in addition to the costs, disbursements and attorneys' fees incurred in the prosecution of this action.

### THIRD CAUSE OF ACTION

*Age Discrimination in Violation of the New York City Human Rights Law ("NYCHRL")*

95. Mr. Pennolino repeats the allegations in paragraphs 1 through 94.

96. Mr. Pennolino is a person under § 8-102(1) of the NYCHRL, and Defendant Central Productions is an employer subject to the provisions of the NYCHRL under § 8-102(5) of the Administrative Code.

97. By its actions detailed above, Defendant Central Productions has unlawfully discriminated against Mr. Pennolino based on his age in violation of the NYCHRL.

98. As a result of the discrimination described above, Mr. Pennolino has suffered substantial damages.

99. Defendant Central Productions knew when it fired Mr. Pennolino that the NYCHRL prohibited discrimination based on age.

100. By terminating Mr. Pennolino's employment for discriminatory reasons with knowledge that the NYCHRL prohibited such conduct, Defendant Central Productions engaged in a discriminatory practice with malice and/or with reckless indifference to Plaintiff's rights, and therefore, engaged in willful age discrimination.

101. Defendant Central Productions' willful discrimination against Plaintiff based on his age gives Mr. Pennolino the right to damages, including but not limited to, loss of earnings, employment benefits, retirement benefits, residuals, job opportunities and other incidental expenses, emotional distress, punitive damages, attorneys' fees, costs, and interest, all in amounts to be determined at trial and estimated to be in excess of $20,000,000.

## FOURTH CAUSE OF ACTION

### *Breach of the Employment Agreement*

102. Plaintiff repeats the allegations in paragraphs 1 through 101.

103. The Agreement constitutes a valid and enforceable contract between Mr. Pennolino and Central Productions LLC.

104. Mr. Pennolino has performed all of his material obligations under the Agreement.

105. Defendant has breached the terms of the Agreement by failing to give "Directed by" screen credit on all episodes of the Series on which Mr. Pennolino rendered such services, including but not limited to the special featuring an interview with President Obama (the "Obama episode"), which was nominated for a Director's Guild of America Award.

106. The Company's refusal to give Mr. Pennolino credit as co-director of the Obama episode, despite his role as co-director, and his contractual right to the credit, denied him the opportunity to receive a nomination for a Director's Guild Award for the episode that went instead to Mr. Meyer.

107. Defendant Central Productions has breached the Agreement by preventing Mr. Pennolino from directing episodes of the Series during the term of the contract, refusing to give him credit for directing those episodes, and giving credit for those episodes to Mr. Meyer.

108. Defendant Central Productions breached the covenant of good faith and fair dealing implied in the Agreement, by preventing Mr. Pennolino from directing episodes of the Series during the term of the contract, by refusing to give him credit for those episodes, and by giving credit for those episodes to Mr. Meyer.

109. The loss of his director's credits has substantial value, and has damaged his reputation.

110. After Mr. Pennolino lost the credit, while he was still working on the program, several people in the industry asked him if he had been fired.

111. The loss of credits also reduced Mr. Pennolino's compensation through the loss of residual revenues.

112. Defendant Central Productions' breach caused Mr. Pennolino substantial financial, reputational, and emotional damages.

113. By virtue of the foregoing, Mr. Pennolino has been damaged in an amount to be determined at trial, with interest thereon, in addition to the costs, disbursements and legal fees incurred in the prosecution of this action.

**FIFTH CAUSE OF ACTION**

*Breach of Agreement to Give Director's Credit for the Obama Episode*

114. Plaintiff repeats the allegations in paragraphs 1 through 113.

115. Central Production's failure to give Mr. Pennolino credit as co-director on the Obama episode was in breach of the agreement that Ms. DePace and Ms. Katz made, on behalf of Central Productions, to give Mr. Pennolino credit for that episode.

116. As a result of the Defendant's breach, Mr. Pennolino has suffered substantial financial and reputational damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

*Breach of Agreement to Exercise Option for Second Year of the Employment Agreement*

117. Plaintiff hereby repeats the allegations in paragraphs 1 through 116.

118. Defendant Central Productions promised Mr. Pennolino, in communications from Executive Producers Ms. Katz and Ms. Flanz, and Supervising Producer, Ms. DePace, that Central Productions would exercise its option for the second year of his contract.

119. This promise constitutes a binding agreement.

120. Central Productions breached its agreement to exercise its option for the second year of Mr. Pennolino's contract.

121. As a result of the Company's breach, Mr. Pennolino has suffered substantial financial and reputational damages.

122. By virtue of the foregoing, Plaintiff has been damaged in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

i. On the First Cause of Action, lost wages (including, but not limited to, back pay, front pay, with benefits and residual revenues), in an amount to be determined at trial and currently estimated to be in excess of $20,000,000, liquidated damages in an amount equal to the damages awarded, plus attorneys' fees, costs, disbursements and prejudgment interest;

14

ii. On the Second Cause of Action, lost wages (including, but not limited to, back pay, front pay, with benefits and residual revenues) and emotional distress, in an amount to be determined at trial and currently estimated to exceed $20,000,000, plus attorneys' fees, costs, disbursements and prejudgment interest;

iii. On the Third Cause of Action, lost wages (including, but not limited to, back pay, front pay, with benefits and residual revenues), emotional distress, in an amount to be determined at trial and currently estimated to exceed $20,000,000, plus punitive damages, attorneys' fees, costs, disbursements and prejudgment interest;

iv. On the Fourth Cause of Action, damages in an amount to be determined at trial, plus attorneys' fees costs, disbursements and prejudgment interest;

v. On the Fifth Cause of Action, damages in an amount to be determined at trial, plus costs and prejudgment interest

vi. On the Sixth Cause of Action, damages in an amount to be determined at trial, plus costs and prejudgment interest;

viii. Such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury.

Dated:    New York, New York
          June 16, 2022

                                              HARWOOD LAW PLLC
                                              *Attorney for Plaintiff*

                                      By:    _____
                                              Anthony Harwood
                                              260 Madison Avenue, 8th Floor
                                              New York, NY 10016
                                              (212) 867-6820